Good morning, Your Honors. May it please the Court. My name is Ben Roswood. I represent the appellant, Wailea Partners, Limited Partnership. Shall we proceed? Absolutely. Thank you, Your Honors. What we have here is a situation where, at the pleading stage, in violation of well-established Ninth Circuit precedent, the District Court proceeded to select one of several interpretations of provisions in the ISDA Master Contract and the related documents that reflected the terms of the intended transaction between the parties, which are a hedge fund based in Northern California, at least the investors of the hedge fund, 80 percent of which live in Northern California, and an international bank well known as HSBC. Mr. Roswood, let me ask you a preliminary question, which was not raised by the briefs, but which we have a sui spondi duty to raise, which is, do we have jurisdiction where is the diversity pleaded as to the citizenship of each of the LLC members? As I read it, you pleaded that Wailea is a limited partnership organized under the laws of the State of Delaware. Wailea Capital GP LLC is a Delaware limited liability company that is Wailea's sole general partner. But the law is pretty clear, at least in this circuit, that limited partnerships and LLCs are citizens of every state of which their partner members and owners are citizens. And I don't see that you've pleaded the domicile or residence of the owners of your limited partnerships and LLCs. And if you haven't, then you haven't pleaded diversity of citizenship, and therefore I don't see the jurisdictional basis of your lawsuit. In a district court either, I suppose. Well. And we're told over and over again by our bettors in Washington that we have to immediately turn to questions of jurisdiction sui spondi, whether the parties raise it or not. What do I do with this situation? I believe the complaint does plead the essential elements for establishing Federal jurisdiction. But not the citizenship or residence of the owners of the partnerships and their limited partners. So if the complaint is required to explicitly allege that each one of the limited partners is a resident of a state other than the defendant, then the allegations fail to do that and we should just. If you have any partner who's a citizen of New York, then you lack diversity. Right. We don't have any of those. We don't know that. We have to affirmatively allege that to have this argument. Do you know how many partners there are? Off the top of my head, I would say between 25 and 35. I don't remember exactly. It's not hundreds. And like I said, 80 percent of them are in northern California. There are some, I know there are some in Florida. I know there are some in other states in the West Coast. I'm not aware of any investor. See, the thing is that HSBC operates throughout the country. Right. It doesn't have anything to do with HSBC. It has to do with where the partners are domiciled. We know where HSBC is domiciled. It's domiciled in New York. Because they have, as we allege here, offices that they hold out as their headquarters. They have offices outside of New York. Sure. But if you want to go to that argument, then what you're arguing is that HSBC has citizenship in other states, which really makes you viable to non-diversity. Right. If it's where they were organized and where their own self-stated location of their headquarters are, then those states, to my knowledge, are not. I mean, I understand your point that it's not in the complaint and that's a threshold question. I'm just saying I don't think that is an issue on the merits in the facts. If it's a procedural issue, then I think the appropriate thing to do would be to remand the case, amend the complaint, have the issue of jurisdiction heard first. If you don't do that, then there's going to be a risk that, you know, dozens of California residents will never have their case heard because of a procedural issue. No. You can bring it in New York court. You can try bringing it in California court. The statute of limitations, as you saw, is one of the issues in this case. And if I have to bring a new case, I don't mind bringing a case somewhere else. But what we have here is a lot of these claims need to be brought within a certain time frame. And we filed in 2011. Here we are in 2014. Some of those claims may or may not be available to those jurisdictions. If we don't have jurisdiction because diversity has not been properly alleged, we dismiss the appeal. Yes. Period. You have to determine that you don't have jurisdiction. And what I'm asking you to do is remand to allow the pleading to be amended if it's not sufficiently pleaded. This was never raised by the district court. This is the first I've heard of it. I guess, you know, if you want to, like, I mean, that would be some kind of arbitration. I don't think there's anything that has to be further argued on it. The fact is clearly in the complaint as to what is not there. And let's go to the other issues, if you'd like. I'm sorry. I misunderstood. You're saying there's no reason to continue? No, no, no, no. I said let's go to the other issues. To stay on this topic. Oh, okay. Move to the merits. Go to the merits. So, you know, essentially what we have is well-pled factual allegations about my client's reliance on affirmative statements and communications made by the reference fund, the Senator reference fund in this underlying swap transaction. Paragraph 18 specifically says what happened and what happened in advance, what was required to happen and what happened in terms of confirmation of the essential precondition in fact that was required before either party would agree to enter into any swap transaction whatsoever. Here it was a condition precedent to the formation of the contract. Right. Yeah. Condition precedent to formation is distinct from a condition precedent to performance under an otherwise valid and enforceable agreement. This was something that both sides said we will not have a transaction, much less a contract reflecting its terms, until we get confirmation, independent confirmation, and all of the sections of the section. How is the failure of a condition precedent to formation, where is that exactly in the complaint? Well, that is another way of reading the mutual mistake or unilateral mistake. If confirmation of a fact, namely that at the time of contracting and historically his senator's funds had been invested in accordance with a very specific hedge trading strategy, if that fact is required to be confirmed by both parties or one party, my client, before the contract, then that is, you know, factually, if not legally, a condition precedent to the formation of the contract. But the law about conditions precedent to formation of the contract and the law about mutual mistake are different. It's much harder to prove condition precedent to formation of the contract. I agree. Well, for all evidence, in the form of an oral agreement as to a condition precedent to formation is permitted under California law and New York law to be admitted to as long as it's not. I thought you said you didn't have any of that. As long as it's not inconsistent with the express language of the contract. You have an integration clause, don't you? You have an integration clause, don't you? That's correct. But even if you have an integration clause, if you're challenging the formation of the agreement, even under New York law, parole evidence is admitted to establish the existence of an oral condition precedent agreed to by the parties as long as it's not inconsistent or contrary to the express language in the agreement. But you said that you don't have a separate oral agreement. Right. I'm just saying, you asked the difference. And I conceded your point that there is a legal difference. All right. But you don't have parole evidence of a different oral agreement. No, I have parole evidence. I'm just saying it's not pled in the complaint. It's pled in this complaint. It's pled as a mistake. And you pointed out correctly that that's not condition precedent. That's different. The law is different. So you asked the district court to allow you to replead this? Yes. Yes, I told the court that I had additional documents and I showed the court additional documents that showed that the parties agreed in advance. One of them was HSBC's own investment guidelines concerning swaps of this nature. You put these in the record? I gave them to the court. I don't know if they made it into the record. And make them part of the record. I don't know if they made it into the record or not. I didn't check. I can't do anything with them if you didn't make them into the record. I think they are in the record. I don't know. Does the swap agreement refer to the Senator fund any place? Does it refer to what? The Senator fund. Yes. Yes. Annex 2, which is attached to the back of the confirmation, refers to the specific reference fund. If it refers to the Senator fund, so it was understood at the time that that's where they were investing. Yes. Then how do you get around all of the things that the parties agreed to in paragraph 12? Why doesn't that allocate the risk here and tell you that your clients were sophisticated, smart folks who were figuring this all out for themselves? Well, I mean, you have to – that's not in the complaint. I mean, if it were proven – I mean, if certain things were proven, like these provisions in section 12 meant what you want to do. Well, I'm just reading them for myself. But, I mean, they don't say what you've just, you know, interpreted them to mean. Each party's made its own independent decision to enter into this transaction. Right. No one's made certain representations. Neither party is relying on any communication written or oral from the other party. That's true. And now you want to introduce parole evidence. And what? Now you want to introduce your parole evidence. Parties have continued to be solely responsible for making an independent appraisal of an investigation of the financial condition, prospects, creditworthiness, affairs, blah, blah, blah. All of those things, if this contract actually is valid and enforceable and was entered into, then all of those things apply. And still do not preclude the arguments that my client is making. Because if we do everything – if YLEA does everything that it has a legal duty to do, and it does all of its due diligence as stated, and it doesn't rely on anything HSB says or does at all, it still has a claim that it reasonably relied – I mean, the sections that you cite also say that YLEA is not only entitled to but obligated to verify the information that it receives from HSBC with a third party. And that's in Section 13a, 13.4a – or, excuse me, 13.4b. Let me give you the excerpts of record number. It's very important. Because what happened is they did go, you know, months before they agreed to enter in any swap to, here it is, ER-91 and ER-92, and in particular 13.4b, the last sentence says any such communication with HSBC should not be the basis upon which the recipient entered into such transaction and should be independently confirmed by the recipient prior to entering the transaction. That's what YLEA did in paragraph 18 and paragraph 17, 16, and 15 as well in the complaint. We see that certain statements were made and that those statements were then confirmed through an independent party in writing. A letter was given to YLEA in response to its request for confirmation. So to a letter from whom? From Senator itself. Senator, right. And that's enough. And if a third party, through a misrepresentation, innocent or otherwise, induces one party to enter into a contract with another party, then that's sufficient under California law and New York law, but California law applies on formation issues, as we know, that's sufficient by itself to rescind the entire agreement. I mean, because this isn't just like the fundamental, most basic aspect of the transaction. So if you receive confirmation of it as the parties contemplated from an independent third party, the very best source of information concerning the facts, they say, you know, not we think, you know, go talk to so-and-so, we say, you know, our capital has been historically and is currently invested in accordance with this strategy. Then they also say, you don't like our private offering memorandum from 1996 or 2006? We'll amend it, and they do it a year later, and they eliminate multi-strategy They eliminate all the stuff that would otherwise create some ambiguity about what their intent is. Historically, they confirm. Presently, at the time of contracting, they confirm. And then they eliminate their ability to change anything. Now, it's really important. My opposing counsel did a good job of talking a lot about Madoff, but this fund was specifically confined to split-strike conversion, and there were a number of single that's, you know, basically bought S&P 100s, you know, big, large cap, safe, relatively safe equities, and then hedged it with these, you know, puts and calls. What they told us at the time was that they did not want to confine themselves to staying with one particular manager, and we, you know, this is in the summer prior to the first confirmation, said, okay, you're free to move from manager to manager. There was no essential predicate that Madoff be involved, and it's not in the confirmation, and it's not in any of the documentation. And I also, at the hearing, introduced a document that I wanted to include in the amended complaint that showed that that's how my client marketed the investment to its investors, not as a Madoff vehicle. So there's really no issue of fraud or anything like that. It's just a question of was a key fact misrepresented, innocently or otherwise, by a third party on whom my client was entitled to rely, and is that sufficient under the law to, on the basis of a mutual mistake, an innocent misinterpretation, or a unilateral mistake, to rescind the agreement. Right now, if things stay the way they stand, we don't have the bargain. You know, there is no exchange of payments based upon the returns of this particular investment strategy and the formula. What we gave the other side, 16 million, and they just keep it as a windfall. That's precisely what the mistake of fact is supposed to, or the other, you know, equitable theories supporting rescission under these circumstances are designed to avoid. I see I have about a minute overdue. If you're a minute over, we took quite a bit of time with the jurisdictional questions. I will afford you some time for rebuttal. Thank you, Your Honors. Mr. Maloney? Good morning, Your Honors. Tom Maloney on behalf of HSBC Bank. Let me begin by apologizing for not focusing on this jurisdictional question. I think there may be a saving provision here, which we didn't, it's not pled, but I assume if there's another basis for Federal jurisdiction, the Court can rely on it, which is that this is a transaction involving a national bank and interstate commerce. Now, I didn't bring my Federal code with me, but I know there's another Federal jurisdictional section that's premised on that, and if Your Honor would permit, I would like an opportunity perhaps to submit a letter of brief on it. Well, the other solution to this, in light of the fact that nobody's noticed this, would be to have a Federal cause of action. And I don't think a Federal cause of action is a pleasure. I think these are all State causes of action. I don't remember whether the section creates Federal jurisdiction when a bank is, a national bank is involved in a transaction. It's a quirky jurisdictional provision, Your Honor. I'd like an opportunity perhaps to submit a letter of brief on it. Well, the other solution to this, in light of the fact that nobody's noticed this, would be for HSBC to agree to waive the statute of limitations if this had to go back to State court. We wouldn't do that, Your Honor. But I do think that there's another basis for Federal jurisdiction here, I think. But I could be wrong on that. Okay. Well, I'm going to ask you to go ahead and provide us with a letter if you think that there's another basis for Federal jurisdiction. If you could please do that, or in other words, if you can't find it as well. Yes. I'll write to you. Not only another basis for Federal jurisdiction in, hypothetically, in the ether. Right. But in the pleadings. Yes. Cite the particular allegation in the complaint which invokes a Federal cause of action. Would you do that? Yes, Your Honor. All right. Okay. Or a basis for Federal jurisdiction, if it doesn't require a Federal cause of action? And just so that Mr. Roswood knows the rules here, I would give you an opportunity to do the same thing and or respond to counsel's letter on that. I don't want to trigger a whole net of briefings unless the Court instructs you to do otherwise. But I will allow for letters on this and allow both of you to give us an opportunity to weigh in. Okay. With that preamble, I'll get into the merits, and I hope that the Court will be able to deal with this on the merits, which is essentially this is a case between a sophisticated party and a bank. As Your Honor noted, we're dealing with a Delaware limited partnership whose general partner is a Delaware LLC, and there's a particular rep in the record at ER 32, Rep 12J, that says that they're accredited investors under the Securities Act. They're qualified purchasers under the Investment Company Act, and they're eligible contract participants under the Commodities and Exchange Act. That means they satisfy this definition. Kennedy, Mr. Maloney, I'll tell you, a question that's bothering me about your bank's position is this. It appears that your bank commissioned two audits by KPMG, a well-known financial auditing firm, and that in, if I remember the dates correctly, in April 2008, the second of those blew the whistle on Mr. Madoff, which caused your bank to withdraw $400 million of investment in Madoff's senator fund. The YALEA people found out about that withdrawal and asked the bank why it had done so. And rather than share with YALEA its knowledge that it thought that Madoff was a fraud, the conditions had caused them to withdraw, and that there was nothing fundamentally wrong with the senator fund. After which, the good folks from YALEA Partners pundled up another million and a half dollars of collateral, which you kept. Now, doesn't that scenario reek of dishonorable conduct? It would, Your Honor, except that wasn't what was pled. That wasn't what happened. That wasn't what happened as a matter of record fact. If it had been pled, we would have dealt with it. The Court can take judicial notice of the fact that there's been a trial and two of the key witnesses for the government were the KPMG employees who testified they were lied to by Madoff and who, therefore, did not inform HSBC at all about the fraud. There's an SEC filing by HSBC that shows it lost a billion dollars because it had to hedge these investments. Which part of what Judge Baez said didn't happen as a matter of fact? As a matter of fact, HSBC, the KPMG did not conclude that Madoff had committed a fraud. That did not happen as a matter of fact. In fact, the witnesses for KPMG were the witnesses for the government, and its recent prosecution were on their list to be witnesses for the government and are listed in the indictment as having been defrauded by Madoff, so that did not happen. We did not withdraw money from the investment because of any knowledge of the Madoff investment. HSBC did reduce its hedges generally in hedge funds at the time of the Lehman bankruptcy in September, and therefore only lost a billion dollars investing in Madoff, which is a matter of record in its SEC filings. You know, those are the facts. Let me ask a question about this. And so it was market conditions. The relation that I got is inaccurate, in your view. Correct. And it's inaccurate because, number one, you claim there's no pleading and there's no evidence that KPMG discovered Madoff's fraud in April of 2008. And number two, there's no pleading and there's no evidence that HSBC withdrew the funds in reliance on the KPMG information. And three, there's no pleading and there's no evidence that the bank informed Wileya that the reason, of course, for its withdrawal of funds from Senator Fund was market conditions rather than knowledge that Madoff was a fraud. Is that true? It is partially true, Your Honor. There may well have been some communication from the bank informing Wileya that it had changed its head's position because of market conditions. That, in fact, was true because that was occurring in the fall of 2008 at the time of the Lehman Collapse, and the bank was changing its head's positions. But it didn't have to do with any knowledge gained by K-of KPMG. Not having to do with Madoff. There are allegations in kind of the preamble to this complaint that contain some of these allegations, none of which are repeated in the counts, none of which appeared in the briefs, and none of which were argued before Judge Conte. So that was not the focus. If they alleged statements after the last iteration of the swap agreement, what happens to all those clauses? Well, 20B, which is the most relevant clause, which says the bank may well have information, because they understood the bank was a custodian for one of these funds, and the bank was going to have information that they were not going to get. And they agreed in 20B of the confirmation, which is, I think, page 37 of the record, that we would not share any of that information, and that we would have material information potentially about this investment that we were not sharing with them, and they were completely on their own. So, okay, swap agreement, then there is the last collateral investment of $1.5 million. That's after the swap agreement. Correct. But all those clauses? It's actually not after the swap. That's not true either. Okay. The way it worked is that this was a moving leveraged investment. So when they put more money in, they effectively increased the amount of their nominal investment in the Senate fund. So effectively, that last putting money in was a new transaction, and that's what Annex I says. If you look at Annex I on the record, which is ER40, it says basically any time that you put new money in, and you're going to reset the notional amounts and the floating rate amounts, that all terms of agreement reapply. And that gets us exactly into, as Judge Bivey said, the Article 12 representations, which were, we picked the Senate fund, we're not relying on you for anything. And by the way, you're not verifying any information that the Senate fund is giving us. And the other thing, section of provision, Your Honor, I'd like to point you to is section 4 of the 8th, the reporting provision in the agreement. Section 4? It's actually section 8, I apologize, reporting agreement. It says ER28. And if you look at it, it's party B, which is YLEA. That was the one thing that these agreements are tricky. But if you look at the reporting requirements, it's talking about party B, which is YLEA, has to provide to the bank the information about the NABs, has to provide to the bank the information in Annex II, III, which is whether or not they're actually complying with this strike strategy, has to provide to the bank the information about what all their trades are. They were the ones who picked this fund. They came to the bank for financing. The bank financed the transaction. They were in direct communications with Senator Fund. They had plaid that themselves in paragraph 18 of the complaint that Senator Fund wrote to them directly. They were the ones who were supposed to be policing this agreement, not us. We're providing them financing. We're getting a LIBOR return as a bank. They're getting an equity return based on a 3.5 leverage investment, which they deleveraged down. They actually took some money out of this investment in September. If you look at paragraph 15, you see that they withdrew $50,000 from this investment. They actually redeemed some money from this fund, and then before they decided to put more money in again. So they were the ones who were making these determinations, not us. Now, Judge Conte considered their requested amendment. He handed up the materials before Judge Conte, and Judge Conte actually specifically addressed in his opinion those documents. And I would point Your Honor to my proper set of notes here. It's in his opinion, which is in the record at ER. I got the opinion. I'm pulling it up. Yeah. If you look at the last part of the opinion, Your Honor, and I'll show it to you, he dealt explicitly with the arguments that are now being raised here, which is the end. Okay. Are you talking about a claim of failure of condition precedent? No. I'm talking about the argument that this additional reporting, his request to amend the complaint to allege the oral condition that she didn't allege in his complaint at all about an oral condition, and to allege these arguments about late documents that that obtained. The judge specifically noted that this was not in their complaint, and then he specifically goes on to say he does it in the context of the condition precedent. Yes, exactly that's where it is. And he says, look, I'm going to consider this argument even though it wasn't pled. And he makes three points under New York law which I think are important. Number one is the merger clause, which Your Honor noted. I think you're talking about ER-167. He says, nowhere in this complaint does YLA allege an oral condition precedent to contract formation. Moreover, even if this complaint were amended to include such allegations, YLA's claim would still fail as a matter of law as explained below. And then he goes into his explanation of New York law, right? Yes, Judge Beyer, you've identified the exact section. And he basically makes three points. One is the one you identified, we have an integration clause, and it's not a general one. There's specific language in the agreement dealing with the fund and with who has responsibility if a mistake is made about the representation made by the fund. Number two, this is the type of provision which parties would be expected to include in an agreement. Since they had focused on this investment strategy in the agreement, if they wanted to make it a condition, they would have said in the agreement it's a condition. And number three, it's inconsistent with a number of provisions in the agreement, including the rep in the agreement that the agreement's legal, valid, and binding. The agreement's not legal, valid, and binding if there's an outstanding condition precedent. So all of these things, there's a wealth of New York cases. I think it's quite clear that New York law applies to this dispute based on the Seidman case. And I think the nub of the case, really, is clearly there was a mistake here. Clearly, people went to the Senator Fund, and the Senator Fund, knowingly or unknowingly, told people they were invested in the strategy, which, in fact, they were not invested in. Who bore the risk of that mistake? That's the question. Was it allocated under this agreement or not? And it was allocated under the agreement. Specifically, it was allocated in Section 12, as Your Honor pointed out. Specifically, Section 12 says that they selected the fund without any advice from us. It's in 12G. It says specifically, they understand that the strategy may not be followed. They're prepared to accept the consequences. And now, when it wasn't followed, they want to undo that election as a sophisticated party. You can't do that. The world changed. We lost a billion dollars here, too. There were a lot of victims from Madoff. There were a lot of smart people who didn't find what happened there, you know, including the SEC, including the government. You know, it was a – they did not allege, Your Honor – I think this is critical when you look back to focus on a complaint – they did not allege that we committed fraud, which is what, essentially, you're suggesting, that we've lied to them. There's no allegation of fraud in this complaint whatsoever. The allegations are these mistake allegations, these innocent misrepresentation allegations. Those allegations are precluded by the parties' agreements here. If they want to go back and allege fraud, you know, they could have alleged a fraud case against us, as Your Honor pointed out. Kennedy allowed to go back and allege fraud as to that final swap transaction. In other words, if they – if the plaintiffs can allege the relation of facts, which I stated to you earlier, that you knew from KPMG, you didn't tell them, in fact, you misrepresented why you were withdrawing $400 million, and you allowed them to continue giving you collateral, isn't that a viable cause of action? Your Honor, if they could – if a fact consists with Rule 11 and 9b could have alleged that, they would have alleged that. It's very easy in a brief, reply brief, in a Ninth Circuit for the first time, to put these arguments, you know, two years after the oral argument. What you're saying is that this scenario, which I laid out to you at length, was not put to Judge Conte as a ground for amendment. Correct. And therefore, we should not countenance it. Correct. It was not put to Judge Conte. He had – he has discretion. And certainly if they – certainly if they wanted to allege a fraud claim, which was very different in character than the nature of the claims that they were alleging about no contract formation, it was their duty to do that. They did not do that. And I – and I submit to you the reason they didn't do it is it's just not true. Well, that's a minor inconvenience when you're pleading. All right. But your point is that these facts, there's nothing in these facts which indicates that they learned them after seeing Judge Conte. No. That's our statute of limitations point. The world knew two and a half years before they filed their complaint that Madoff was a fraud. I mean, I think everyone in the world knew that, unfortunately. But they didn't know that you knew and didn't tell them. Well, yes. They couldn't have known that because it didn't happen. Thank you, Your Honor. Thank you, counsel. We'll expect the letter. I'll get back to you on the jurisdiction. Mr. Rockwood. Mr. Rockwood, just up front, and I'm – in your letter, I would at least like a proffer from you, a representation about the nature of the members of the partners. The Court may or may not accept the proffer, or the Court may decide to send it back for further findings. Was there a date by which we agreed to submit these letters? We can get them in the next week or so. Thank you. And I would at least like the proffer on the citizenship of the partners. Again, the Court may or may not accept the proffer, or may decide to send it back for findings. I'm not making any representations as to how we're going to handle it. But I would like to know what the – what you're prepared to tell us. I think that's an excellent suggestion. Just to firm up the date, the week would be the 22nd. Can we do Friday the 24th, submit those letters by Friday the 24th? I think if the two of you can agree on Friday the 24th, that would be fine. Okay. Thank you for your guidance on that. First of all, I think, Judge Bea, you really focus on something that was addressed with the lower court, which is that it wasn't until December 10th, 2010, years later, that the court-appointed trustee for the bankruptcy proceedings involving Inree, Bernie, Madoff, BLMIS, his name is Irving Picard, put out a complaint against HSBC that detailed all of these things. So, yes, everyone knew Madoff was a fraud, but we didn't learn about anything until the trustee who had access to nonpublic information concerning it. But if you knew that as of December 10th, 2010, when Mr. Picard filed his complaint in July 2011. Did you move before Judge Conte to amend your complaint to allege those facts? The best fraud claim that there is, Your Honor. Can I get an answer in the form of yes or no? I didn't move to amend, and here's why. Because the best fraud claim in California is the statutory claim for misrepresentation in connection with the purchaser's sale of security.  And that, I did argue, they argued it was untimely from a statute. I argued that it wasn't due to equitable tolling and concealment on the part of the defendant. And that was something that the judge denied, and that's something that we should be permitted to do as well. I would prefer just to have, because I don't have to show a reliance on those statutes, and because of, you know, Section 11 and the particular part of that. So to straighten my mind, there was no proffered amendment. Correct. Number one. And there was no stated request before Judge Conte to allow you to amend to state a cause of action for common law fraud, because on that $1.5 million of additional collateral, the HSBC had lied to you as to why they had withdrawn the $400 million. I don't believe the record contains any request to amend on that basis, Your Honor, to answer your question directly. One, once again here, we have a counsel, this is in rebuttal, attempting to infuse in the record things that do not exist in the complaint and are improper on a motion to dismiss, that there's a sophisticated party, that there's a billion dollars of losses, that Madoff was the cause. Like, all of these things just have nothing to do with the dispute between the parties and they're not properly considered, you know. The other point is that it is error to apply the integration clause or the merger clause to preclude oral evidence of a mistake about a fact, either unilaterally or mutually, about something that both parties agreed was required to exist and be confirmed independently, which it was, before either of them would enter into a swap contract. The merger clause is, just like the choice of law provision and just like every other provision, is not enforceable under California law until the contract is determined to be valid and enforceable as a whole. Seidman is addressed thoroughly and completely distinguished and gutted, as are the other cases that my final closing counsel raised in the Court below. It's crystal clear that in both of those cases, the parties, in one manner or another, attempted to rely on the existence of a valid contract and sue for breach of contract benefits, and at the same time tried to reject the choice of law. Here, we say that no contract was never formed, and the law on that is well addressed in all the briefs below and above. I think the last thing was why doesn't Section 12 put the allocate the risk of mistake, which has been admitted to have occurred, on Wiley exclusively? And the first answer is there's no – not one of these provisions is enforceable until the contract is determined to be valid and enforceable as a whole. But even if it is, if you look at the language, and this is when I started my argument. I said the crux of the problem here is that we had a district court among alternative interpretations and inferences to be drawn from the contract language choose the ones that were most favorable to the other side when there was dispute about the meaning and it was not – it was not self-evident that the meaning was as the district court. But isn't that the function of a trial judge? Doesn't he have to interpret written contracts? If it can be interpreted as a matter of law, yes. But he is committing error if there are multiple competing interpretations to which the language is reasonably susceptible, and a proffer has been made about what those terms mean by both sides, and he refuses – this is at a motion-to-dismiss stage – to hear evidence about what those words meant and were intended to mean. The first canon of contract interpretation is you try to discern what the party has intended. And there – and on a motion to dismiss where the nonmoving party is entitled to all favorable inferences to be drawn in their favor, as to the meaning of the contract where the language is reasonably susceptible to alternative interpretations, assuming that, you know, their interpretation is even reasonable, ours is certainly reasonable, and ours would preclude dismissal. And so he erred in that respect fundamentally. On each of these provisions, if you look at our arguments in the briefing below, you'll see our position on each one of them. Did you have any other questions for me? I don't think there are any other questions. We've taken you well over your time. Thank you so much. Thank you both. Thank you both, counsel. With that, we've completed the calendar for today, and the Court stands adjourned.
judges: Restani, Bybee, Bea